IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal No.: 1:21-cr-149-RCL |
| ) | |
| JAMES HERMAN UPTMORE, ) | |
| ) | |
| Defendant ) | |
| _____) | |

### Sentencing Memorandum for Probationary Sentence

On behalf of Mr. James Herman Uptmore, undersigned counsel moves this Honorable Court to impose a sentence of probation. A probationary sentence is "sufficient, but not greater than necessary" for this Class B misdemeanor as Mr. Uptmore was primarily motivated to enter the Capitol to keep his son safe, was peaceful throughout his walk through the Capitol, and cooperated with law enforcement when contacted. The request for probation is based upon the following:

**1. Unresolved PSR issues.**

There are no PSR disputes to resolve.

**2. Primary grounds for a probationary sentence.**

    **a. The offense Mr. Uptmore pled to does not qualify for the sentencing guideline calculation.**

Mr. Uptmore pled guilty to a class B misdemeanor. Sentencing guidelines calculations are not provided for Class B misdemeanors or any other petty offenses. *See* PSR page 15, paragraph 77. Sentencing guideline calculations for Class A misdemeanors typically result in a 0–6 month recommended guideline range. Since a Class B misdemeanor is a lower-level offense

than a Class A misdemeanor, the USSC would likely recommend a probationary sentence if they issued recommendations for petty offenses.

### b. Mr. Uptmore's primary motivation for walking through the Capitol was paternal, not political.

Mr. Uptmore's had offered to take his youngest child, Chance, on a trip as a birthday present. Chance asked that they go to Washington DC to attend President Trump's rally on January 6th, 2021. Together father and son travelled to Washington and attended the rally. After the speeches, they followed the crowd up the mall to the Capitol. Chance wanted to observe what was happening inside the Capitol.

According to Chance's statement to FBI agents, Mr. Uptmore "warn[ed] [Chance] not to go inside" the Capitol. *See* PSR, page 7, paragraph 29. However, once Chance decided to enter the building, Mr. Uptmore "followed [Chance] into the Capitol." *Id.*

By way of context, Chance is the youngest of Mr. Uptmore's 5 children. Two of Mr. Uptmore's sons died as young adults. PSR, page 11-12, paragraphs 50-51. Mr. Uptmore's primary reason for entering the Capitol without permission was to watch over and protect his son.

### c. Mr. Uptmore's conduct inside the building was peaceful.

Video evidence establishes that Mr. Uptmore's behavior in the Capitol was completely peaceful. Chance Uptmore filmed his activities and movements inside the Capitol. The FBI seized the video footage. Since Mr. Uptmore was following Chance around the building, there is ample video documenting Mr. Uptmore's actions within the building.

Mr. Uptmore entered the building through an open doorway. He followed other people into the building and walked by police officers on the way into the building.



Once inside the building, Mr. Uptmore spoke with several law enforcement officers as he walked through the public spaces of the building. In the video associated with the screen shot on the left, Mr. Uptmore is seen approaching and speaking with approximately four law enforcement officers.

*Source: Chance Uptmore video IMG_230.*

3



Mr. Uptmore and others supported a police officer who recovered a piece of artwork that a civilian attempted to remove from the Capitol.

*Source: Chance Uptmore video IMG_241.*

Mr. Uptmore remained in the Great Rotunda and main hallways during his brief walk through the Capitol.  He did not enter the Senate Chamber, the House Chamber, or any private office.

Once Mr. Uptmore left the building, he and others intervened when a civilian threw a barricade at the building. The barricade is behind the person in orange shoes. Several crowd members told the person to stop. The efforts by the crowd were successful.



*Source: Chance Uptmore video IMG_0271.*



Mr. Uptmore interacted with law enforcement officers after he left the building.

*Source: Chance Uptmore video IMG_262.*

### d. Cooperation with law enforcement, remorse, and refusal to speak with the media.

Law enforcement came to the Uptmore home in San Antonio to interview them about January 6. Mr. Uptmore has been remorseful for his actions, he cooperated with the law enforcement interview, and he has never obstructed law enforcement. Since being charged in this case, numerous media outlets have reached out to Mr. Uptmore for comment. Mr. Uptmore has not made any statement to the media or on social media. He will not be making any public statements after his sentencing.

### 3. The § 3553(a) sentencing factors support a probationary sentence.

The Court is charged by Congress with ensuring that the ultimate sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth" in 18 U.S.C. § 3553(a)(2).[1]

---

[1] 18 U.S.C. § 3553(a) instructs the trial court as follows:
> The Court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established (by the sentencing guidelines)….
> (5) any pertinent policy statement….
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

A federal conviction followed by a probationary sentence is a severe sanction. As the Supreme Court noted in *Gall*, a sentence of probation is not an "act of leniency," but rather is a "substantial restriction of freedom." *Gall v. U.S.*, 552 U.S. 38, 44 (2007).

A probationary sentence for Mr. Uptmore is appropriate for a Class B misdemeanor, it is just, and it will promote respect for the law.

A probationary sentence provides adequate general deterrence. The certainty of punishment, rather than the severity of punishment, is the dominant factor in achieving general deterrence.[2] Thus, the government's aggressive prosecution of Uptmore resulting in a federal conviction with a period of probation provides maximum general deterrence.

Additionally, there is no reason why "general deterrence" justifies a greater sentence for the peaceful Uptmore than was needed for other people who received probation for misdemeanors related to entering the Capitol on January 6, 2020.[3] *See also* 18 U.S.C. § 3553(a)(6)(unwarranted disparities).

Regarding specific deterrence, Uptmore is 65 years of age with minimal criminal history (one misdemeanor conviction that is 40 years old). His motivation in entering the Capitol was to

---

[2] Social science research on general deterrence shows that while *certainty* of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects . . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999). The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. It examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." The report concludes, "[T]he studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

[3] Counsel anticipates that the Government will file a sentencing chart prior to sentencing that will show the government recommendations and the sentences imposed for all of the January 6th defendants. Several defendants have received straight probationary sentences. It is believed that these defendants were, like Uptmore, peaceful as they walked through the Capitol.

keep his son safe, not to overthrow the government. A federal conviction with probation adequately deters Mr. Uptmore from participating in any other unlawful protests.

Finally, counsel respectfully submits that a split sentence is not permissible for a Class B misdemeanor.[4] Even if a split sentence is a valid option, the 3553(A) factors support a probationary sentence.

**WHEREFORE**, counsel asks the Court to find that a straight probationary sentence is "sufficient, but not greater than necessary" for this 65-year-old father who did not disrespect law enforcement, use or threaten the use of any violence, or force his way into private areas of the Capitol.

RESPECTFULLY SUBMITTED,

*s/ Christopher W. Adams*
CHRISTOPHER W. ADAMS
171 Church Street, Suite 360
Charleston, SC 29401
Tel. 843.277.0090
adams.c@adamsbischoff.com

DATED: October 20, 2022

---

[4] The issue of whether a split sentence is lawful for a Class B misdemeanor was recently briefed and argued in this Court. The issue is currently pending in the Court of Appeals for the DC Circuit. USA v. James Little, USCA 22-3018. Uptmore adopts the arguments of Little for the purpose of preserving this legal issue.

9

## CERTIFICATE OF SERVICE

It is hereby certified that on the date referenced above this document was electronically filed with the Clerk of Court using the ECF system that will notify the parties of record of this filing.

Respectfully submitted,

*s/ Christopher W. Adams*
Christopher W. Adams
Federal I.D. # 10595

*Attorney for James "Sonny" Uptmore*